Please call the first case. I'm Todd McHenry and I represent John Haley. Thank you. Adam Delta field on behalf of the people. What's your name? Adam Delta field. Okay, whenever you're ready. As mentioned, I'm Todd McHenry and I represent John Haley. With the court's permission, I'd like to reserve two minutes for rebuttal. John Haley stands convicted of involuntary manslaughter in connection with the drowning of Dewdwan. There are two issues raised on appeal. Of those two, while we're happy to answer questions on either issue, I'd like to focus the court's attention simply on the first issue, which is the trial court's admittance of other crimes evidence in the form of Ronald Squire's testimony that he was pushed into Lake Michigan by John Haley a month before the issue of this case. In assessing the issue, the first concerns are whether or not the other crimes evidence could be relevant for any purpose other than propensity or to show that he was a man of bad character. If so, then we must evaluate whether the probative value was substantially outweighed by the risk of prejudice. First and foremost, Haley made a statement, a videotaped statement, where he admitted that he pushed both Dewdwan in the water because he thought it was funny, and he also pushed Ronald Squire a month earlier into the water because he thought it was funny. Mr. McHenry, the statement that he made wasn't as clear as you're stating it now. You know, what I read, it sounded as though he said, well, I was running and I bumped him and I didn't look back, there were people up there, I'm not so sure. I mean, you make it seem as though he said, oh, I admitted, I pushed him into the water, but that's not exactly how his confession came out. It was really kind of wishy-washy, for lack of a better term, in terms of the clarity with which he admitted what he had done. It certainly was in the beginning, Your Honor. He definitely attempted to mitigate and try to lessen his culpability when he initially made the statement. However, once you get to about page 26-27 of the transcript on, it's clear that he's moved away from, you know, I inadvertently ran by and bumped somebody in the water to, I intended to, I pushed them in the water, I thought it was funny at the time, I ran away. It was clear, and even the detective who was the state's witness, the state's motion to admit the other crime's evidence. And given the fact that the issue was not really in dispute, many of the reasons why this evidence was brought in in the first place, for M.O., knowledge, intent, advocacy, and    absence of mistake, all of those things in weighing the probative value, it diminishes substantially the probative value of the evidence because there were other methods of proving the same thing. Additionally, not only did John Haley's statement indicate that he pushed intentionally the two fishermen in the water, but also Eric Christie's testimony on the stand, he was asked, you know, did you know that he pushed them in the water, and he confirmed that he did know that. Counsel, can I ask you about your reliance on Thigpen? The state argues that in Thigpen, the court found that the two crimes had no common modus operandi, and what argument do you make in that regard? There are several points. Primarily, modus operandi, however, should not have been an issue in this case because, again, that goes simply to whodunit, and we know that he intentionally pushed them in. So that was not irrelevant. Modus operandi should not have been a legitimate reason why this evidence got in in the first place. But why? Because it has to go, based on, you know, both the language, though, you know, factually we can say that Thigpen and also Nunley are slightly different than this case. The principles that were used in those cases absolutely do apply, and those principles are that when you do have more than one way of proving something, or when the issue is not really in dispute, the probative value diminishes. So the fact that the trial court in this case went on the belief that if there's a great similarity, therefore it's relevant, therefore it should be admissible if it's not prejudicial. But the case law actually doesn't line up that way. Both Thigpen and Nunley stand for the propositions that if you have alternate methods of proving a given fact, even if it were relevant to a material issue at trial, you have to weigh that into account in assessing the prejudice and whether or not Squire's testimony should have been admitted in the first place. And in this case, where Eric, you know, he testified at length to what had happened, he knew that Haley pushed him in, the statement was admitted also. There was plenty of evidence there, so when you bring in the testimony of somebody, a victim, who is then describing again and again what it's like to go through, it's obviously a harrowing experience. Everybody described it as that. The state even, in sentencing, was honest about the information and said that this evidence, it was as if we heard what was going on in Doan's head. So again, this information, it was detailed, it didn't just prove that he intentionally did it, and it had marginal relevance at best and diminished probative value. Again, going to the points that it was supposedly admitted for, the judge admitted it on the basis that it could go to intent or knowledge, could go to modus operandi and absence of mistake. I've touched upon modus operandi and absence of mistake, that those really should not have been an issue. I'm going to go back to my point. As to the intent or knowledge, Squires testified as to what he experienced. There was nothing in Squires' testimony that went to what John Haley knew or what John Haley experienced. John Haley, unfortunately, pushed Squires in and ran away, didn't see what he went through. So none of that testimony would have been relevant to prove what John Haley knew or necessarily what John Haley intended. How was he prejudiced? He was prejudiced, well, first and foremost, I mean, the case law, Illinois Supreme Court case law, cites people versus lingering, cites that typically other crimes evidence, if it's improperly admitted, calls for reversal. So that's the general principle to start with. How was he prejudiced in this case? This is an abuse of discretion case. How was he prejudiced? He's prejudiced because in... And yet he had only his mother testify that he was a good boy. Correct. The facts are pretty much what they are. Absolutely. So how was he prejudiced? He's prejudiced because the jury had to, even to convict him of involuntary manslaughter, they had to prove that there was a reckless act performed, but they also had to prove that the act was likely to create great bodily harm or death. So there's an issue that is actually, the jury needs to struggle with that because as the state in distinguishing, in their rebuttal they compared to what Doan went through and they distinguished the two outcomes based on the fact that, you know, luckily in Squire's case he knew how to swim. So if that's true, if it's true that the difference between surviving and not surviving comes down to potentially whether or not you can swim, then the question of whether great bodily harm or death is likely is an empirical question about how likely is it that somebody knows how. You're getting into this other issue that you said you weren't going to talk about. With respect to the prejudice, though, I'm trying to tie it into that they had a real issue that they had to consider and when they're given this heated testimony showing how bad John Haley is, what he put an individual through and what Doan would have gone through, that that could, in the case where he's charged with first degree murder, but the facts don't support first degree murder and the only thing left on the table is the instruction for involuntary manslaughter, at the end of the day they found him guilty of manslaughter. And based on the fact that nobody would have liked John Haley in that moment, we're suggesting that it may not have been based on the reasons it should have been and that is an honest viewing of whether or not it was likely to cause great bodily harm. So are you saying that had the testimony not been admitted that he would have been acquitted of everything and he would have been, you know, the jury would have found what? I'm not sure what you're saying. You're saying that the admission of this evidence that he pushed squires into the water a month before, that's the reason that the jury convicted him because they had to convict him of something. Is that what you're saying? I'm saying that that is what the substantial risk is. In analyzing the issue, you look at what is the risk of prejudice and that's what it is. You know, the case law states that it's based on this idea that you're a bad person and we're going to punish you for something. It doesn't matter whether you necessarily committed aggravated battery versus involuntary manslaughter. Battery wasn't charged in this case. But he was charged with first degree murder and the jury didn't go with that. That's correct. So he got the involuntary. That's correct. So again, how is he prejudiced by this supposed prior crime evidence? Because even if the state charges a greater offense and they end up convicting on the lesser, the fact that they didn't convict on the greater offense doesn't mean necessarily that they carefully considered whether he was guilty of the lesser. It's possible that somebody could have looked at the facts and said, you know, this is really an aggravated battery case with a terrible outcome that wasn't foreseen and we don't know that necessarily it was likely that somebody would have drowned in those circumstances. I'm not saying it had to go that way, but that is certainly a possibility. And based on that, the jury has to objectively and unbiasedly look at exactly what they convict somebody of. All right, Henry, what about the intent factor that you briefly touched on before as to whether or not he knew that it was likely that Mr. Doan would drown or could drown? What about that? I mean, it was offered. They argued that it was going to go to what he intended, that he knew it was a dangerous act. But again, squires didn't testify to anything that John Haley knew or that was likely. And at the end of the day But they had a combined squires testimony combined with the testimony of his friend who said that they returned to the scene because Haley was concerned that maybe the guy had drowned. I mean, doesn't that show that he knew that it was possible that he could drown if you push somebody into the lake fully clothed, bundled up in winter clothes, that maybe they'd drown? I do disagree with one thing in that, and that is that the statement was that Haley was concerned, and that's why he came back. The testimony from Eric was that Eric was concerned, and he went to Haley, and it was his idea to come back, and he said Haley agreed to come back, and he stated that Haley was remorseful. So I would posit that being remorseful for something doesn't necessarily show that you thought it was dangerous. You could, you know, offend somebody verbally. Right? Somebody who has had too much to drink could offend their friend verbally, and the next day wake up and say, I'm very remorseful. I regret what I said. You know, I shouldn't have said that. It was mean. It doesn't mean it was dangerous. So you're saying the fact that he accompanied his friend back to the lake front to see whether the man he had pushed into the water had drowned, he really wasn't concerned about that. He was just going there with his friend because his friend was concerned. Is that better or worse for you? I'm not sure whether. Well, as to the, certainly in the equities of whether or not Haley is a legal issue of whether or not Eric was testifying to what Haley knew at that time, he wasn't testifying to what Haley knew. He did say that he was remorseful, but that was it. He said that it was his idea to go back, and Haley agreed to it. And then once they were there, they both left thinking that nothing had happened, meaning he wasn't harmed because they didn't see any evidence that he was harmed and his fishing gear had been taken away. So based on that, unfortunately, Haley was left with the impression that, well, it ended up okay in the end. So, again, it doesn't go to the, that testimony did not prove that John Haley knew or appreciated the consequences of his actions. Counsel, can I ask you about this argument you made briefly about the aggravated, you suggested it could have been charged as an aggravated battery? It could have been charged, I mean, as a battery of some sort because definitely the evidence proved that, and Haley admitted, he made contact, he pushed the fisherman in the water. There was certainly a battery there, so that. This was never brought up before the trial court? No, absolutely. And then, again, with respect to the prejudice before leaving that topic, in rebuttal, the state, though on one hand said this is going to go towards modus operandi, it's going to go towards absence of a stake, intent and knowledge, turned around then and said, and focused on, that Mr. Doan went through the same things that Squire went through, also compared the fact that Squire's boots felt like bricks, this would have been something that Doan went through, also. Again, that issue was directly related to the prejudice because, again, in finding him guilty of involuntary manslaughter, they had to prove that it was likely to cause great bodily harm or death. That factor would have gone to whether or not if you're wearing boots and you're pushed in, it's likely that you could drown. So, again, the evidence was purportedly admitted for one thing, it was used in another way, and that is how John Haley was prejudiced in this case. In concluding, the evidence of Ronald Squire's testimony was unnecessary and unrelated to the material issues in dispute and prejudiced John Haley. For those reasons, we would ask this Court to reverse and remand for a new trial. Let me ask you one last question. Certainly. As Justice Harris said, the standard is abuse of discretion, right? In order for us to do what you're asking us to do and overturn what the trial court did, what would we have to find in terms of the trial court having abused its discretion? Just describe for me, if you could, in a summary fashion. I'll try my best. It would be similar to like in Nunley and Thigpen where they analyzed the issue and said, no, clearly there were other ways to prove what the prosecution needed to prove that were less prejudicial. In this case, this extensive information should not have been let in. Those cases that were cited in the brief and mentioned here, they were both reversed based on abuse of discretion standards. So there's case law supporting it. The general principles that evolved in those cases should apply to the facts of this case as well. And for those reasons, we would ask this to be remanded. Thank you. Thank you. Counsel? May it please the court, Assistant State's Attorney, Adam Delfield, appearing on behalf of the people. Defendant has raised two issues on appeal. I'll respond to the first one, which is whether the other crime's evidence was improperly admitted at trial. The evidence presented at trial plainly showed the defendant attacked an unsuspecting, heavily dressed fisherman, Gul Doan, from behind. The victim plunged into the cold waters of Lake Michigan and had no apparent means of survival. Just one month prior to this incident, defendant had attacked another fisherman, Ronald Squires, in an almost identical manner. Given these two details, the people charged defendant with first degree murder. The other crime's evidence was admitted to show defendant's knowledge of the case and was relevant to show the modus operandi, to show that it was no mere accident that these two people went in. Mr. Delfield. Yes. Mr. McHenry pointed out that the defendant, at some point, according to Mr. McHenry anyway, unequivocally admitted that he pushed the victim into the water and that the time he was done, he admitted with some clarity that he had committed this act. Is that true? No. The people would disagree with the defendant's account of the confession. In the people's brief, it is discussed that the confession was self-serving when it was a confession. And at other times, it was a mere description of a bump that sent him in while the defendant was running along. And the defendant didn't mean to put him in. And at worst, if he did mean it, it was just a mere matter of horseplay. The people were charging the defendant with first-degree murder and sought to show the defendant fully appreciated the great risk involved. So you're basically, to answer my question, you're basically saying there was no clear unequivocal admission that, yes, I, you know, I pushed the guy in the water and that's what I did. There was no clear statement of that sort. Is that what you're saying? Correct. The defendant's admission was self-serving and would not have been suitable to prove the first-degree murder charge. I'm sure that he wasn't trying to help the state prove the first-degree murder charge. That's not what I'm asking. I'm asking whether there was a clear and unequivocal statement, as Mr. McHenry seems to suggest, that the defendant had stopped the pre-verifications, as you mentioned in your brief, and basically admitted what he did. Are you saying that you don't agree that he has never, never clearly admitted committing this act? Correct. Before the modus operandi use of the prior crimes evidence was appropriate? Correct. Defendant never gave a clear statement agreeing with the state's account of how these attacks occurred and agreeing with the state's account of what defendant was thinking when he pushed him in. The statement was not clear. And so the other crimes evidence was relevant to go towards the first-degree murder charge, and it showed defendant's knowledge of the danger involved for three reasons. One, Your Honor picked up just during defendant's argument, which is that Eric Criskay spoke with defendant after the attack and explained that there was real danger in what defendant had just done, and defendant understood this and felt remorse, and the two went back. So that tended to show the defendant understood the danger involved in the surprise attacks he was committing. Furthermore, when you heard Mr. McHenry's response to that, he said it was not defendant's idea to go back. He just went because his friend wanted to. And the fact that he felt remorse doesn't mean that he knew that what he did was deadly, in fact. Besides disagreeing with the conclusions reached by defense counsel, this was for the jury to determine. It's the evidence was probative in a great way that defendant understood the knowledge because of the great danger involved, because he was informed of it and he felt remorse. And because defense counsel wishes to may interpret the evidence in one way, that doesn't eliminate the fact that it was still very probative and went towards his first degree murder charge and was therefore relevant and properly admitted for that purpose. Furthermore, when Ronald Squires first went into the lake, he testified that he cried out to God and cried for help, and Zoe also cried out. Defendant was still present and it is reasonable to infer that he would have heard their screams as he left them. And finally, the other crimes evidence also showed the defendant was familiar with the area and the dangerous environment in which he placed the victim. Counsel, can I ask you, the detailed testimony that was offered from Mr. Squires, the arguments made that that would have prejudiced him because of the detail and the emotion that one would feel hearing about how one struggles when being thrown into the lake. What would you say to that, that that was not prejudicial in its presentation? To begin with, Your Honor, the question is not so much whether it was prejudicial but rather whether the prejudice greatly or significantly rather outweighed the probative value of the evidence. And furthermore, I would inform the court that when just before Ronald Squires was called to testify, the defense counsel stated on the record that if the people failed to call Ronald Squires to testify, he would call Ronald Squires. It's on page EE36 of the record. So defense counsel clearly wanted Ronald Squires to come to the stand to testify and stated so on the record. And during cross-examination, defense counsel elicited the same testimony that on appeal defendant now claims was too prejudicial. And when the prejudicial comments were made, defense counsel failed to raise any timely objection and therefore failed to grant the court the opportunity to correct any possible error. So therefore, in terms of the testimony, not only did it not significantly outweigh the probative value, but defendant himself wished to elicit the testimony, wished to call Ronald Squires to the stand, and during closing argument, defense counsel was the one who first began by relating the situation that Ronald Squires had undergone. And the people's response in closing argument was to reply to what defendant had said. Defense counsel wished to say that because Ronald Squires had survived this terrible ordeal, it simply wasn't one that posed a serious risk of great bodily harm. And the people replied to that argument in their rebuttal. And as a general matter, when the defendant pleads not guilty, the people are allowed to offer all relevant evidence. And the admission of that evidence is well within the discretion of the trial court. The record simply doesn't support a finding that the trial court abused its discretion. And so the people would ask that the court affirm the trial court's decision on that matter. Thank you. Thank you, counsel. Thank you. Mr. Henry? Rebuttal, please. I have just a few points on rebuttal. But let me ask you something. Mr. Delderfield pointed out, and I meant to ask you that before, the defendant's counsel indicated that if the people hadn't called Squires, they were going to. So are you complaining about something now that you had intended to do yourself? Because there is the record does support the fact that defense counsel indicated that they were going to call Squires if the state hadn't. So what testimony would he have given in the defense case that he didn't give that would have been different from the testimony that he gave in the state's case in chief? Sure. Well, there were a few things. First, the testimony that was given by Squires, you know, first defense counsel was faced with the issue of, well, I've litigated this pretrial. I've lost on it. The evidence is going to be coming in. At that point, then, defense counsel tried to do the best that he could to mitigate the damage done and wanted to focus on that, okay, these incidents, it did happen. You were pushed in. But in the end of the day, you weren't harmed. You didn't experience great bodily harm. You didn't drown. So wanted to get those points out. And the state, in their opening remarks, mentioned Ronald Squires and said to the jury, you're going to hear from Ronald Squires, who is going to testify about his experience. So this issue was before the jury. They were thinking about it at that point. So at this point, then, defense counsel wants to at least get out there that you weren't hurt, were you, after all this, and then the extent to which. I'm talking about something different. Maybe I'm not asking the question clearly. I didn't get the impression, from what I read, that it was during the trial that you indicated that you were going to call Squires because you've got to name your witnesses ahead of time. And the defense indicated that if the state didn't call Squires, they were going to call him in their case. And that was done not after the state made their opening statement, but before. So my question to you is, why are you complaining about this man's testimony because you were going to elicit this? There's only one set of facts here. I mean, and if you're telling the truth, there's only one set of facts. So I'm not sure what testimony Squires would have given in your case that would have been different in the state's case. That's what I'm trying to get at. What's the difference that you're saying, well, we could have called him, but if we had called him, he would have said something different. And what is that something that would be different? Well, certainly, defense counsel, had there not already been a direct examination that brought out all these details, if defense counsel brought Squires up to testify in the first case, it would be certainly improbable that defense counsel is going to go through all this detail about what you experienced, what it was like to have boots on when they were wet, all those things to get those details out there. So had it been a different situation where on direct examination defense is now using the witness, only in hindsight can I guess that it would have been a fairly tight, direct. I would have been able to testify that Haley pushed him into the lake fully clothed, you know. I was fully clothed. He came up from behind me. I didn't see him. Shoved me really hard, and I flew seven or eight feet out into the air and landed in the lake in my clothes. That testimony wouldn't have changed, would it? It wouldn't have. If he had been called to testify, he could have testified that I was pushed in and all those things. However, my memory of the record was that it happened that this discussion happened at trial. So that's one difference. I would need to then check the record again. But my memory, if it serves me correctly, is that that discussion that counsel is talking about happened at trial. So, again, this issue was out of the bag. The jury, their people, they want to hear it. As far as why the objections weren't made as it was coming in, I mean, this is simply, once they start hearing that, defense counsel doesn't want to malign the jury and look like the individual who wants to keep them from the real story. So defense counsel tried the best they could to mitigate the damage of the evidence. And the one thing I did want to bring up, just in rebuttal to the substance of what opposing counsel mentioned, was whether or not the confession was admitted. Excuse me. Once you get to page about 26 of the transcript, there are statements, I know I pushed a man in the water and he died. I pushed him into the water thinking it would be funny. I thought it would be funny when I did it a month ago. I said thanks for the light. I pushed him in there. Eric and I laughed. This is the very end of the statement. It goes on, I thought it was funny, the very last line of the statement, I thought it was funny. By the end of this statement, there's no doubt that John Haley is admitting to intentionally pushing them into the water. For those reasons, we would ask the court to remand him. No, that doesn't negate that he could have still said it was a mistake. It was still inadvertent. He mentioned that he did it. He still didn't recognize the consequences of what his act would be. He still could have said that. He made the statement that I pushed him into the water thinking it was funny. Therefore, a mistake. I made a mistake. But to say that you're doing it because you think it's funny means that you're intending to do it and this is the reason why. Because I think it's funny, I'm going to do it. It doesn't mean otherwise he would have made the statement, I bumped him, pushed him into the water, and then I thought it was funny. That's not what he's making the statement about. It's your interpretation, which brings me back to my original question in terms of the abuse of discretion standard. That's what the trial court has to look at. And, you know, what would we have, what would you, that's a pretty steep hill for you to climb. I mean, you have to show that this trial judge was so far out on a limb in his analysis of these arguments that no other reasonable person in their right mind would ever come to the same conclusion. I mean, can you really say that? The case law in this area, it is around a general rule that this other crime's evidence is by its very nature prejudicial. That's the way the case law starts. To get an exception to that, it has to be for all these other valid reasons other than propensity, other than to show that he's a bad character. So if those reasons are at best marginal and arguably not even related to the trial at this point, where nobody's contesting that Haley intentionally pushed Doan into the water and nobody was contesting that he intentionally pushed Squires into the water. So for these reasons, in going through the case law that we've cited, that had extremely low probability value relative to the obviously prejudicial nature of hearing how a victim must feel in that circumstance. And based on those reasons, we do think that case law supports reversal and remand. Okay, thank you very much, Mr. Cain. Thank you. And we thank you, Mr. Doan. We feel this matter will be taken under advisement. The court's adjourned.